IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**ROBERTA KELLY**,

          Plaintiff,

vs.

**CITY OF PORTLAND, OREGON, RONALD FRASHOUR AND STEVE STAUL**,

          Defendants.

Civil Case No. 09-1125-KI

OPINION AND ORDER

    Roberta Kelly
    5109 NE Ainsworth Street
    Portland, Oregon  97218-1826

        Pro Se Plaintiff

Page 1 - OPINION AND ORDER

      J. Scott Moede
      Senior Deputy City Attorney
      Office of City Attorney
      1221 SW 4th Avenue, Rm. 430
      Portland, Oregon  97204

          Attorney for Defendants

KING, Judge:

      This case arose when Portland Police officers Ronald Frashour and Steve Staul responded to 911 calls reporting a domestic dispute.  Plaintiff Roberta Kelly alleges that the officers violated her constitutional rights and committed various torts when they subdued and arrested her.  Before the court is Defendants' Motion for Summary Judgment (#110).  For the reasons below, I dismiss all claims with prejudice except for the excessive force claim Kelly alleges against Frashour.

## FACTS

      On September 22, 2007, Kelly and her husband, Larry Olstad, each called 911 about a domestic dispute between them at their home on NE Ainsworth Street in Portland.

      Olstad reported to the 911 operator that his estranged wife, plaintiff Kelly, just assaulted him for the second time that day.  Olstad had locked himself in a bedroom and reported that Kelly had a knife, that she had punched him in the mouth earlier that day in Vancouver, that police had responded in Vancouver but Olstad did not want Kelly arrested at that point, and that he needed police help again.

      Kelly also called 911 to report that her estranged husband was using drugs again and was calling 911 to report that she was assaulting him.

Page 2 - OPINION AND ORDER

An emergency dispatcher sent officers Frashour and Staul to the home. The officers were told by the dispatcher to report to a family disturbance in which the complainant (Olstad) was assaulted by his wife who had a knife, that she had punched him in the mouth, and that the wife (Kelly) also called to report that she was being assaulted and that she did not have a weapon.

When the officers arrived at the house, Frashour went outside to speak with Olstad. Olstad told Frashour that Kelly punched him in the mouth earlier when he visited Kelly at her mother's home in Vancouver, where she had been living for seven months. When Olstad returned to his home on NE Ainsworth, Kelly was already there. She grabbed him around the neck, ripped his shirt, and pulled a knife on him. That caused Olstad to lock himself in the bedroom and call 911. Frashour observed that the sleeve of Olstad's T-shirt was ripped, and that Olstad had a fresh scratch and red marks on the front of his neck.

Staul went inside to speak with Kelly. She told Staul that she and Olstad were separated and had argued about Kelly's suspicion that Olstad was using marijuana and Olstad's belief that Kelly had some of Olstad's paperwork. Kelly said that Olstad "got in her face and cussed at her." Moede Aff. Ex. 5, at 3. Kelly tried to slap Olstad but he blocked her hand and grabbed or pushed her, causing her to fall back. Kelly tried to push Olstad and he left. Kelly told Staul she did not want Olstad arrested, she just wanted him out of her house.

Staul then went outside to speak with Olstad. Olstad showed Staul minor scratches on his neck which Kelly inflicted. Staul arrested Olstad for Harassment and handcuffed him without incident. Staul told Frashour that they would also arrest Kelly.

Frashour asked Kelly to come out and talk to him on the front porch. She did so. When Frashour told Kelly she was under arrest, she tried to back into the house and shut the door.

Page 3 - OPINION AND ORDER

Frashour told her to stop and pushed the front door open. Kelly started running to the kitchen. Frashour did not want Kelly to get a knife from the kitchen. He ran after her and grabbed her left arm but she tried to pull away. Frashour was able to pin Kelly's shoulder into a pantry area. He told her not to resist and to come with him. Kelly pulled loose, ran into the bathroom, and tried to shut the door. Frashour blocked the door open with his foot, pulled out his pepper spray, and told Kelly to put her hands behind her back. She told him not to taser her. He told Kelly that he had pepper spray and to put her hands behind her back.

     Kelly turned her back on Frashour, put her hands out of Frashour's sight in front of her body, and tried to use her cell phone. Frashour reached for Kelly and they struggled some more. Frashour grabbed her face, pushed her to the ground, and told Kelly words to the effect that she should stop resisting. Kelly rolled onto her back and raised both legs as if to kick Frashour if he approached her. He gave her a one-second burst of pepper spray and left the bathroom. Kelly started to get up on all fours and move toward Frashour. He could see from the orange spray pattern that the pepper spray did not hit Kelly in a way that would be entirely effective. Kelly continued to fail to comply, so Frashour gave her a second burst of pepper spray directly to her face. Kelly stood up and walked to Frashour so that he could lead her out of the house.

     Staul and Frashour each used an arm bar on Kelly and Staul handcuffed her. They sat her on the step of the house. Kelly was in distress from the pepper spray so the officers called an ambulance. Staul carefully poured water on Kelly's face to help wash off the pepper spray. She screamed for about ten minutes until the medical unit arrived. The EMTs cleared Kelly for transport to jail.

Kelly's friend picked her up from the jail.  The friend describes Kelly's face as burned and states that Kelly had such strong fumes from the pepper spray that they had to open the car windows, even though it was cold, to alleviate the painful feeling the fumes caused to the women in the car.  Kelly's son saw her later that day, after she was released from jail.  Her son describes Kelly's skin as really red and that she seemed very weak.

On September 3, 2009, Kelly sent a letter to Risk Management Services for the City of Portland.  She stated: "He [Frashour] drenched me–I was covered from head to toe.  The spray blinded me and scorched my body–I have pictures and I have witnesses.  I was still in excruciating pain the next day and for days after."  Moede Aff. Ex. 10.

Kelly states that she was acquitted of all charges on April 1, 2008.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to point out the absence of any genuine issue of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party."  Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (internal quotation omitted).

# DISCUSSION

I.   <u>Evidentiary Ruling</u>

In her response to defendants' motion, Kelly quotes extensively from the arbitration decision filed in the case Olstad brought in state court against Frashour, Staul, and the City of Portland.  Even if I decided that offensive issue preclusion was appropriate here, it appears that the arbitrator's primary decision was that the officers did not have probable cause to arrest Olstad.  If this decision is relevant to Kelly's claims at all, it only undercuts her argument because the arbitration decision supports a conclusion that Olstad was the victim of Kelly's domestic violence.  The record does not contain a properly authenticated copy of the decision, and Kelly provides no argument as to why I should give the arbitration decision preclusive effect.  I decline to consider the decision in my analysis.

II.   <u>State Tort Claims</u>

In her Complaint, Kelly briefly mentions that she alleges claims for negligence, false arrest, unreasonable use of force (battery), and false imprisonment.  The Oregon Tort Claims Act requires notice of any claim to be given within 180 days after the alleged loss or injury.  ORS 30.275(2)(b).  This incident took place in September 2007, and Kelly never gave a tort claim notice.  The 180-day period has expired.  Thus, Kelly cannot proceed on any common law tort claim.  I grant summary judgment and dismiss her claims for negligence, false arrest, battery, false imprisonment, and any other common law torts.

III.   <u>Constitutional False Arrest Claim</u>

Kelly alleges that her false arrest violated her Fourth Amendment right to be free from unreasonable seizure.  Kelly was arrested for Assault IV Domestic Violence, in violation of

ORS 163.160, and Resisting Arrest, in violation of ORS 162.315. Defendants contend that probable cause existed for her arrest and additionally point to a state statute giving officers immunity for mandatory domestic violence arrests made in good faith.

An arrest without probable cause violates the Fourth Amendment; thus, the existence of probable cause is a defense to a § 1983 false arrest claim. Harper v. City of Los Angeles, 533 F.3d 1010, 1022 (9th Cir. 2008); Devenpeck v. Alford, 543 U.S. 146, 155 (2004) ("Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest.").

> Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested. While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, mere suspicion, common rumor, or even strong reason to suspect are not enough. Under the collective knowledge doctrine, in determining whether probable cause exists for arrest, courts look to the collective knowledge of all the officers involved in the criminal investigation.

Harper, 533 F.3d at 1022 (internal quotations and citations omitted).

Kelly was arrested for Assault IV Domestic Violence and Resisting Arrest. These crimes are defined as follows:

> 163.160 Assault in the fourth degree. (1) A person commits the crime of assault in the fourth degree if the person:
>
> (a) Intentionally, knowingly or recklessly causes physical injury to another; or
>
> (b) With criminal negligence causes physical injury to another by means of a deadly weapon.

ORS 163.160(1).

> 162.315 Resisting arrest. (1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.

Page 7 - OPINION AND ORDER

>	(2) As used in this section:
>
>	(a) "Arrest" has the meaning given that term in ORS 133.005 and includes, but is not limited to, the booking process.
>
>	(b) "Parole and probation officer" has the meaning given that term in ORS 181.610.
>
>	(c) "Resists" means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer.  The behavior does not have to result in actual physical injury to an officer.  Passive resistance does not constitute behavior intended to prevent being taken into custody.
>
>	(3) It is no defense to a prosecution under this section that the peace officer or parole and probation officer lacked legal authority to make the arrest or book the person, provided the officer was acting under color of official authority.
>
>	(4) Resisting arrest is a Class A misdemeanor.

ORS 162.315.

When the officers arrested Kelly, Olstad had told them that Kelly had punched him in the mouth earlier that day and had come after him with a knife, causing Olstad to lock himself in a bedroom and call 911.  Olstad had a torn shirt and minor, but visible, scratches on his face and neck.  Olstad and Kelly referred to each other as husband and wife.  Probable cause existed to arrest Kelly for Assault IV Domestic Violence.

When Frashour told Kelly that he was arresting her, she fled from him, tried to shut doors on him, pulled away from his grasp, and raised her legs as if to kick him.  Her actions go well beyond passive resistance.  Probable cause existed to arrest Kelly for Resisting Arrest.

Moreover, Oregon statutes require mandatory arrests in domestic violence incidents when there is probable cause:

Page 8 - OPINION AND ORDER

> (2)(a) Notwithstanding the provisions of subsection (1) of this section [concerning the use of criminal citations generally], when a peace officer responds to an incident of domestic disturbance and has probable cause to believe that an assault has occurred between family or household members, as defined in ORS 107.705, or to believe that one such person has placed the other in fear of imminent serious physical injury, the officer shall arrest and take into custody the alleged assailant or potential assailant.

ORS 133.055(2)(a).

Because probable cause existed that Kelly had assaulted Olstad, the officers were required to arrest Kelly and take her into custody.

The mandatory arrest statute also provides immunity for the officers making the arrest, if they act in good faith and without malice: "No peace officer shall be held criminally or civilly liable for making an arrest pursuant to ORS 133.055 (2) or 133.310 (3) or (5) provided the peace officer acts in good faith and without malice." ORS 133.315(1). Although Kelly argues that the officers had an ulterior motive for arresting her, including "engag[ing] in revenge-weapons testing, with immunity," there is no evidence to support her argument. Pl. Kelly's Mem. in Opp'n to Defs.' Mot. for Summ. J. at 11.

In summary, probable cause existed to arrest Kelly, the arrest was mandatory because it was a domestic violence assault, and a state statute provides the officers with immunity for that type of arrest. I grant summary judgment and dismiss the Fourth Amendment false arrest claim.

IV.   Claims Against the City of Portland

Kelly avers very generally that the City or a City policy violated her constitutional rights

In Monell v. Department of Social Services of New York, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978), the Court held that the word "person" in § 1983 includes municipalities and other local governing bodies which may be liable under any of three theories: (1) if an employee was

acting pursuant to an expressly adopted official policy; (2) if an employee was acting pursuant to a longstanding practice or custom; or (3) if an employee was acting as a final policymaker. Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004). A municipality cannot be liable under § 1983 solely based on a respondeat superior theory. Id. at 691.

Kelly has failed to identify any particulars as to her claim against the City. I grant summary judgment against any Monell claims against the City.

V.      Excessive Force

Kelly alleges that Frashour used excessive force when he drenched her with pepper spray from head to foot. Kelly does not allege an excessive force claim against Staul.

Frashour argues that the two one-second bursts of pepper spray, used to gain Kelly's compliance when she resisted arrest, were reasonable, particularly in the context of a domestic violence call. According to Frashour, domestic violence calls are generally uncertain, unfold rapidly, and present an extra degree of danger to officers due to heightened emotion and the subject's familiarity with the surroundings and any available weapons.

> Allegations of excessive force are examined under the Fourth Amendment's prohibition on unreasonable seizures. Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); Deorle v. Rutherford, 272 F.3d 1272, 1279 (9th Cir.2001). We ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Graham, 490 U.S. at 397, 109 S. Ct. 1865. We must balance " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396, 109 S. Ct. 1865 (quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)); see also Scott v. Harris, 550 U.S. 372, 383, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Stated another way, we must "balance the amount of force applied against the need for that force." Meredith v. Erath, 342 F.3d 1057, 1061 (9th Cir. 2003).

Bryan v. MacPherson, 608 F.3d 614, 619-20 (9th Cir. 2010).

Page 10 - OPINION AND ORDER

> This balancing test entails consideration of the totality of the facts and circumstances in the particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

Blanford v. Sacramento County, 406 F.3d 1110, 1115 (9th Cir. 2005) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

There appears to be a material factual dispute on the amount of pepper spray Frashour used against Kelly. Frashour states that he sprayed two one-second bursts of pepper spray. Kelly states she was drenched from head to foot, her body was scorched, and she was in excruciating pain for days. Her friend and son corroborate Kelly's description. If a jury accepts Kelly's description of the events, it could find that Frashour used excessive force in light of the severity of Kelly's alleged crimes and the threat she posed to the officers and Olstad. Thus, I cannot dismiss Kelly's claim for excessive force.

Frashour also asks for the claim to be dismissed because he is protected by qualified immunity.

To determine whether a government employee is entitled to qualified immunity, the court uses a two-part test: (1) the court "must determine whether, viewed in the light most favorable to the plaintiff, the government employee violated the plaintiff's constitutional rights"; and (2) the court "must also determine whether the rights were clearly established at the time of the violation." Friedman v. Boucher, 580 F.3d 847, 852 (9th Cir. 2009). The court may use its discretion to decide which of the two prongs should be addressed first. Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818 (2009).

The factual issue on the amount of pepper spray also makes it impossible for me to conclude that Frashour is protected by qualified immunity. Accordingly, I deny Frashour's motion for summary judgment against the excessive force § 1983 claim. That sole claim will proceed to trial.

## CONCLUSION

Defendants' Motion for Summary Judgment (#110) is granted in part. I grant summary judgment against all claims alleged against defendants Staul and the City of Portland and dismiss the claims with prejudice. I dismiss all claims with prejudice alleged against Frashour, except for the excessive force claim.

IT IS SO ORDERED.

Dated this _____10th_____ day of November, 2010.

                                                  /s/ Garr M. King  
                                                  Garr M. King  
                                                  United States District Judge